CHARLES M. LANNING *vs.* THE ADMINISTRATOR OF JOHN V. LANNING.

1. A executed to B an assignment of two bonds and mortgages, amounting to about $1300, in trust to collect the moneys due thereon, and after satisfying certain claims against A, to pay out of said money to C a debt of $1231, with interest, and to pay the surplus, if any, to the complainant. A afterwards filed a bill to set aside the assignment in favor of C, on the ground that there was no debt due to him; that the notes which constituted the pretended indebtedness were given without consideration, and with a view to the creation of the trust; and that the real consideration of the assignment in favor of C was an agreement by him to maintain the complainant during life. The evidence corroborated the allegations of the bill. C refused to execute the agreement on his part. He resists the bill, and attempts to enforce the execution of the trust. *Held*—

*First.* The trust in favor of C is inoperative and void.

*Second.* So much of the trust money as has been paid to C must be refunded.

*Third.* The balance of the fund in the hands of the trustee, after a proper allowance for his services, must be paid to A, and the notes surrendered to him.

2. Under the proviso of the act of 1859, (*Nix. Dig.* 928, § 34,) if either of the parties die before the testimony on either side is taken, the evidence of the survivor is inadmissible.

3. But, by the act of 1851, (*Nix. Dig.* 228, § 27,) the complainant in any action of an equitable nature, is a competent witness to disprove so much of the defendant's answer as may be responsive to the allegations of the bill, even after the death of the defendant. The act of 1859 does not repeal this provision.

4. The enacting clause of the act of 1859 was designed to authorize the examination of parties to the record in cases in which their evidence was not previously admissible. The operation of the proviso must be limited to the cases in which the parties were rendered competent by the enacting clause.

---

On the 23d of December, 1861, the complainant executed to a trustee, an assignment of two bonds and mortgages, amounting to about $1300, in trust to collect the moneys due thereon, and after satisfying claims against the complainant amounting to $78.50, to pay out of said moneys, unto John V. Lanning, a brother of the complainant, a debt of $1231,

with interest, and to pay the surplus, if any, to the complainant.

The bill seeks to set aside the assignment in favor of John V. Lanning, on the ground that there was, in fact, no debt due to him. That the notes which constituted the pretended indebtedness were given without consideration, and with a view to the creation of the trust. That the real consideration of the assignment, and the sole purpose of the trust in his favor, was an agreement and undertaking on his part, that he would take the complainant into his family, and would clothe, board, and lodge him, during life, for the sum of $1231, so assigned in trust for him. And that previous to the execution of the assignment, the defendant promised to execute a bond to secure such support and maintenance, which he afterwards refused to execute, or in any wise to fulfill the contract on his part.

The answer denies fully the charges of the bill, and alleges that the trust was created for the satisfaction of a debt of $1231, due from the complainant to the defendant, as stated in the assignment.

*Mr. Strong*, for complainant.

*Mr. E. W. Scudder*, for defendant.

THE CHANCELLOR. The main issue between the parties is a question of fact, viz. whether the trust was in fact created to secure a previous indebtedness, or whether it was designed to transfer the complainant's property to his brother, in consideration of his undertaking to maintain the complainant for the residue of his life. There is direct evidence, on the part of the complainant, of repeated declarations made by the defendant to different witnesses, at different times after the creation of the trust, that the complainant owed him nothing, and that he was to keep him for his property as long as he lived. The parol testimony upon this point is strongly conflicting. It comes, upon both sides,

principally from the lips of interested witnesses. Standing alone, it is not sufficiently clear or decisive to overcome the documentary evidence in support of the defendant's case. But the clear and decisive weight of the mass of circumstantial evidence in the cause is with the complainant. It is unnecessary to examine the evidence in detail. A reference to a few of the leading facts established by the evidence, will be sufficient to justify the conclusion, and exhibit the grounds upon which it rests.

The alleged debt was about equal to the entire property of the complainant, which the bill alleges it was the design of the assignment to transfer as the consideration of the complainant's maintenance. The assignment was cotemporaneous with the complainant's going to live with the defendant. The complainant went to live with his brother on the 20th of December, 1861. The assignment is dated and acknowledged on the 23d of December. But the trustee by whom the assignment was drawn, testifies that when the parties first came to him, the complainant was so much intoxicated that he refused to prepare the papers; that they called again two or three days afterwards, when the assignment was drawn and executed. This shows that the agreement by the complainant to transfer his property to his brother, was made at the time that he became a member of his brother's family.

There had been a previous separation between the complainant and his wife, when the complainant, after securing a part of his property to his wife, conveyed the land which constituted the residue of his estate, by an absolute conveyance, to his brother. This deed, though absolute upon its face, was designed as a trust for the grantor. For some cause, this conveyance did not take effect. The complainant subsequently sold the land, received the mortgages for the purchase money, and by the assignment now in question, transferred those mortgages to his brother.

There is no satisfactory evidence, aside from the notes themselves, of any subsisting indebtedness from the com-

plainant to his brother at the date of the assignment; nor is there anything in the evidence that gives the least color or probability to the existence of such indebtedness. The parties were both laboring men of very moderate means, dependent mainly upon their personal industry for their support. No reason is apparent, nor is any suggested, why so large loans should have been made by the complainant, or why the defendant should have been willing to trust the complainant to the extent of the whole value of his property, without security of any kind. The complainant was intemperate in his habits, and there was nothing in the circumstances, habits of intercourse, or relations of the parties, which rendered such a loan in the least degree probable.

The production of the notes adds no strength to the case, on the part of the defendant. Aside from their dates, they afford no evidence of their previous existence, or that conflicts with the allegations of the complainant's bill, that they were manufactured for the purpose of giving color and apparent validity to the assignment of the complainant's property, without disclosing the real design of the trust.

The notes are both in the handwriting of the payee, and though written on different paper, differing in form and phraseology, and varying in dates nearly two years, the signatures appear to have been made with the same pen and the same ink. Both notes are payable on demand, with interest. The first note is dated May 1st, 1857, for $600; the second note is dated April 2d, 1859, for $400. The assignment was executed on the 23d of December, 1861, nearly five years after the date of the first note; and yet not one dollar of interest is credited or pretended to have been paid upon either note. No security for the debt was ever given or required.

Upon the whole evidence, I entertain no doubt that the account given of this transaction by the complainant, in his bill and in his evidence, is in accordance with the truth and the facts of the case. There was no subsisting indebtedness from the complainant to his brother, prior to the creation of the trust. The assignment of the complainant's property

was made, and the trust created, as a consideration for an undertaking, upon the part of the defendant, to maintain the complainant for the residue of his life. That undertaking, on his part, the defendant refused to execute. His death, and the condition of his estate, render a specific performance of the contract on his part impracticable. The attempt of the defendant to enforce the execution of the trust, according to the terms of the written instrument, is fraudulent. The trust in favor of John V. Lanning must be declared inoperative and void. So much of the trust money as has been paid to him must be refunded. The balance of the fund in the hands of the trustee, after a proper allowance for his services, must be paid to the complainant, and the promissory notes must be surrendered to him.

The claim for the watch, and the money lent by the complainant to the defendant, are not proper subjects of relief in equity. The appropriate remedy is in a court of law, where adequate relief may be had. A decree will be made accordingly.

Upon the hearing, a question was raised as to the competency of the complainant's evidence, which it is proper should be settled; although, in my judgment, the admission or rejection of that evidence will in no wise vary the result, or materially affect the preponderance of the testimony in the complainant's favor.

After the filing of the bill, and before the taking of the testimony, the defendant died, and the suit has been continued against his administrator. It is objected that the complainant is not a competent witness, inasmuch as the suit is against the defendant in a representative capacity. The proviso of the act of 1859, (*Nix. Dig.* 928, § 34,) is that no party shall " be sworn in any case, when the opposite party is prohibited by any legal disability from being sworn as a witness, or either of the parties in a cause sue or are sued in a representative capacity." The design of the enactment obviously is, that neither of the parties shall be admitted to

testify, unless both can be heard. It is immaterial whether the suit is originally instituted by or against a party in his representative capacity, or whether, by reason of the death of one of the parties, it is revived or continued by or against his representatives. In either event, if the death occur before the testimony on either side is taken, the evidence of the survivor is inadmissible. If the death occur after one of the parties has been examined, questions may arise more difficult of solution, but which are not involved in the present case. The evidence is inadmissible under the act of 1859.

But, by the act of 1851, (*Nix. Dig.* 928, § 27,) it is enacted that the complainant or petitioner, in any action or proceeding of an equitable nature, in any court, shall be a competent witness to disprove so much of the defendant's answer as may be responsive to the allegations contained in the bill of complaint or petition. To this extent, and no further, the complainant's evidence is competent.

The provision is not repealed by the act of 1859, either expressly, or by necessary implication. It is true the language of the proviso is very broad, and in terms, does extend to the case provided for by the act of 1851. It provides that no party shall be sworn in any case when the opposite party is prohibited by any legal disability from being sworn as a witness, or either of the parties in the cause sue or are sued in a representative capacity. This language, taken literally, would exclude parties to the record from being sworn in the cause for any purpose whatever. But this could not have been the intention of the legislature. Parties, both at law and in equity, are sworn for various purposes in the progress of a suit. And upon the trial of a cause, they are competent witnesses to prove the loss of a paper, and other facts which rest peculiarly and exclusively within their own knowledge. 1 *Greenl. Ev.,* § 348–9. It has never been supposed that the act can operate to render the testimony of parties incompetent for these and similar purposes.

The broad language of the proviso must have a limita-

U *

tion. It must be limited, I conceive, to the cases in which the parties were rendered competent by the previous clause of the act. The proviso is simply a limitation of, or condition annexed to, the power conferred by the statute. In the absence of a clearly expressed intention to the contrary, it extends to those cases only which are within the purview of the statute. The proviso of a statute is generally intended to restrain the enacting clause and to except something which would otherwise have been within it, or, in some measure, to modify the enacting clause. It is a limitation of, or exception to, the authority conferred. *Wayman* v. *Southard*, 10 *Wheat.* 30; *Voorhees* v. *Bank of United States*, 10 *Peters* 449.

The enacting clause of the act of 1859 was designed to authorize the examination of parties to the record, in cases in which their evidence was not previously admissible. It had no reference to cases in which the parties were already competent witnesses. The operation of the proviso must be limited accordingly.